IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENYATTA SAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-2757-K |
| | § | |
| F2F TRANSPORT, LLC and | § | |
| ANTONETTE DAVIS, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss Plaintiff's Fourth Amended Complaint (the "Motion") (Doc. No. 54) filed by Defendants F2F Transport, LLC ("F2F") and Antonette Davis ("Davis") (together with F2F, the "Defendants"). Plaintiff Kenyatta Samilton ("Plaintiff') filed a Response (Doc. No. 55), and Defendants filed a Reply in Support (Doc. No. 56). The Court has carefully considered the Motion and responsive briefing, the relevant portions of the record, and the applicable law. Plaintiff fails to allege any facts that would allow the Court to reasonably infer Davis could be liable for intentional infliction of emotion distress. Because Plaintiff fails to plausibly allege an independent actionable tort committed by Davis, Plaintiff's claim against F2F for negligent training, supervision, and retention necessarily fails. Accordingly, the Court **GRANTS** Defendants' Motion. Because the

1

Court allowed Plaintiff a final opportunity to plead her best case, the Court will not allow any further amendments and, therefore, **dismisses** these claims **with prejudice**.

## I.    Factual and Procedural Background

All record citations herein are to the CM/ECF-assigned page number.  Plaintiff, who had a Texas Class A Commercial Driver's License ("CDL"), worked as an independent contractor truck driver.  Doc. No. 51 (the "Complaint") at 2, ¶ 7.  Plaintiff applied to work for F2F in May 2024 and, as part of that application, agreed to take a required pre-employment drug test at a third-party facility.  *Id.* at ¶ 9–11.  At 11:47 a.m. on May 20, 2024, Plaintiff went to IMS Screening Solutions ("IMS") to complete this test.  *Id.* at ¶ 11.  Plaintiff felt "uncomfortable" with the IMS provider who, according to Plaintiff, "was rude and aggressive toward [her] in a manner inconsistent with other drug testing sites."  *Id.* at ¶ 12.  Plaintiff claims that the IMS provider "threatened to put [Plaintiff] into the Substance Abuse Prevention program before [she] even provided a sample." *Id.*  Because of this, Plaintiff alleges she "chose to complete her pre-employment drug testing at an alternate facility."  *Id.* at ¶ 13.  Plaintiff contacted F2F's manager, Jonathan Crow, to request taking the required test at another facility.  *Id.*

That same day at 2:23 p.m., Plaintiff went to AccuScreen Drug and Alcohol Testing where she successfully completed her test.  *Id.* at ¶¶ 13–14.  Plaintiff received a "negative" result, which she alleges should have made her eligible to drive for F2F.  *Id.* at ¶¶ 14–15.  But Davis, who is employed by F2F and "responsible for directing

F2F's drug testing protocol," "noted that [Plaintiff] refused to take the drug test at IMS." *Id.* at ¶¶ 15, 17; *see id.* at ¶ 15(a). According to Plaintiff, "Davis determined that [Plaintiff] needed to be taught a lesson" for refusing to take the test at IMS and, acting with "retaliatory intent" and "[k]nowing the consequences of her decision," made an "intentionally false report that [Plaintiff] refused to take the pre-employment drug test". *Id.* at ¶¶ 15, 15(f), 15(g), 18.

This allegedly false report caused Plaintiff to lose her Class A CDL in August 2024, thus preventing her from driving as an independent contractor commercial driver. *Id.* at ¶¶ 18–19. Without her CDL, Plaintiff claims she has lost her income (approximately $75,000 a year) and her home. *Id.* at ¶ 19. Because of that, Plaintiff alleges that she has "experienced extreme emotional distress" such as being "depressed and anxious" and feeling "shame and embarrassment." *Id.* Plaintiff also avers that she is isolated from her family due to lack of funds and losing her home. *Id.* Even though she alerted Defendants to the inaccuracies of the report, Plaintiff maintains that Defendants "have taken no action to correct the inaccurate report or otherwise remedy the harm caused by the inaccurate report." *Id.* at ¶ 20.

Plaintiff, initially proceeding *pro se*, filed this case against Defendants on November 1, 2024. *See generally* Doc. No. 1. On June 24, 2025, counsel made an appearance on behalf of Plaintiff. Doc. No. 15. Over the course of this litigation, Defendants have filed four (4) motions to dismiss. Doc. Nos. 8, 37, 41 & 54. Plaintiff has likewise amended her complaint four (4) times, although once was in response to

a court order identifying a jurisdictional deficiency. Doc. Nos. 20, 31 (curing jurisdictional deficiency), 39 & 51. Plaintiff's live pleading is her Fourth Amended Complaint (the "Complaint") filed in response to the Court's order allowing Plaintiff "**ONE final opportunity to amend her complaint** to allege her best case." Doc. No. 50 (bolded and underlined emphasis in the original). Defendants filed the instant Motion to Dismiss, which is ripe and ready for determination.

## II.    Applicable Law

### A. Rule 12(b)(6) Motion to Dismiss

In reviewing a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the court may consider only "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must presume all well-pleaded facts in the plaintiff's complaint to be true and resolve any ambiguities or doubts regarding the sufficiency of the claims in the plaintiff's favor. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Kane Enters.*, 322 F.3d at 374 (plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim). The alleged facts must be facially plausible

such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although not the same as a "probability requirement," facial plausibility calls for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. at 556 ("Factual allegations must be enough to raise a right to relief above the speculative level."). If a plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct, the claim has facial plausibility. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663; *see Twombly*, 550 U.S. at 555 (although the court must take as true all the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit also allows the district court to consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the

plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).

### B. Intentional Infliction of Emotional Distress

The claim of intentional infliction of emotional distress ("IIED") is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those *rare instances* in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (emphasis added). To succeed on a claim for IIED under Texas law, the plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Id.* The Texas Supreme Court has emphasized that these "exacting requirements" must be satisfied, otherwise the claim fails. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005).

For a defendant's conduct to be "extreme and outrageous" such that she is liable, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal citation omitted); *accord McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998) (per curiam). Conduct that is generally cruel, unfair, or threatening is not "the type of utterly indecent, intolerable, and atrocious behavior necessary to prevail on an intentional infliction of emotional

6

distress claim." *McConathy*, 131 F.3d at 564.  "It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous." *Hoffman-La Roche*, 144 S.W.3d at 445.

To recover on an IIED claim, the plaintiff must also show that she suffered "severe emotional distress, wholly apart from any outrageous conduct on the defendant's part." *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1271 (S.D. Tex. 1995) (internal quotations and citation omitted); *see also Regan v. Lee*, 879 S.W.2d 133, 137 (Tex. App.—Houston [14th Dist.] 1994, no writ) ("[T]his tort is designed to compensate those whose emotions have suffered *extreme harm*.") (emphasis added). Courts have defined "emotional distress" as "any highly unpleasant mental reaction such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry, and nausea." *Patton*, 910 F. Supp. at 1272 (collecting cases); *see Regan*, 879 S.W.2d at 136 (plaintiff must show "more than mere worry, anxiety, vexation, embarrassment or anger.").  "The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it." *Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex. App.—Fort Worth 1994, writ denied).

### C. Negligent Training, Supervision and Retention

The Texas Supreme Court has not directly addressed the requirements of a negligent hiring, supervision, and retention claim.  However, numerous Texas appellate courts and federal district courts in Texas making "*Erie* guesses" have concluded that such claims require the plaintiff to prove (1) the employer was negligent in hiring,

supervising, or retaining the employee and (2) that the employee committed an independent, actionable tort against the plaintiff. *Espindola v. Sam's East, Inc.*, 2014 WL 12605576, at *4 (S.D. Tex. Oct. 23, 2014) (collecting cases); *accord Fuller v. CIG Fin., LLC*, Civ. Action No. 3:22-CV-1289-D, 2023 WL 146251, at *3 (N.D. Tex. Jan. 10, 2023)(Fitzwater, S.J.) (quoting *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex.App.—Houston [1st Dist.] 2005)), *aff'd by*, 2025 WL 570092 (5th Cir. Feb. 21, 2025); *Jackson v. Corp. Serv. Co.*, 2013 WL 12177339, at *10 (S.D. Tex. Feb. 6, 2013); *see Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (acknowledging "we have never expressly set out what duty an employer has in hiring employees" or whether such a claim requires "more than just negligent hiring practices," but recognizing that "there is broad consensus among Texas courts that such a claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices."). It follows that, if the plaintiff cannot show the employee committed an independent, actionable tort against the plaintiff, the negligent hiring, supervision, and retention claim against the employer must fail for "lack of causation." *Brown*, 178 S.W.3d at 384; *see Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F.Supp.2d 545, 550 (N.D. Tex. 2005)(Cummings, J.) (finding that "dismissal of Plaintiff's IIED claim leaves him without a basis for a claim for negligent hiring"); *Frymier v. Aid to Victims of Domestic Abuse*, 2025 WL 1382868, at *4 (S.D. Tex. May 13, 2025), *adopted by*, 2025 WL 2495877 (S.D. Tex. Aug. 29, 2025) (concluding the

plaintiff's negligent supervision must be dismissed because he did not allege an actionable tort claim committed by the employee).

### III.   Legal Analysis

Defendants move to dismiss Plaintiff's claims for IIED and for negligent training, supervision, and retention.  As for the IIED claim, Defendants argue that Plaintiff does not allege sufficient facts to support the second and fourth elements of this claim—that Davis's conduct was "extreme and outrageous" and that any alleged emotional distress was severe.  Doc. 54 at 11; *see id.*at 11–15.  Defendants also argue that Plaintiff's claim for negligent training, supervision, and retention fails as a matter of law because she alleges no other actionable tort besides IIED, which, according to Defendants, fails for foregoing reasons.  *Id.* at 15–17.

Plaintiff responds that she has sufficiently alleged that Davis's conduct was outrageous and that she suffered severe emotional distress as a result.  Doc. No. 55 at 6–9.  Plaintiff further responds that her negligent supervision claim should not be dismissed pursuant to Rule 12(b)(6) because Defendants waived this argument in failing to raise it in their previous motions to dismiss.  *Id.* at 9–10 (citing FED. R. CIV. P. 12(g)(2)).

In their Reply, Defendants press their same arguments as to dismissing both of Plaintiff's claims.  Defendants also respond that they did not waive their failure to state a claim argument as to the negligent training, supervision, and retention claim because Rule 12(g)(2) is inapplicable here.

### A.  Intentional Infliction of Emotional Distress

#### 1.  Extreme and Outrageous Conduct

The Court must examine Davis's conduct as alleged in the Complaint.  *See Sears*, 84 S.W.3d at 612.  The conduct at issue rests on Plaintiff's allegation that Davis made an "intentionally false report" that Plaintiff refused to take a pre-employment drug test, causing Plaintiff to lose her Class A CDL so that she can "no longer [] drive as an independent contractor commercial driver."  Doc. No. 51 at ¶¶ 15, 15(a), 15(e), 19.  Taking the allegations as true, which the Court must do at this stage, Davis's conduct as alleged in the Complaint falls short of "[going] beyond all possible bounds of decency, and [being] regarded as atrocious, and utterly intolerable in a civilized society." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).  Courts have found as a matter of law that more serious conduct does not fall within the realm of conduct so "atrocious" that it goes beyond "all possible bounds of decency" and is "utterly intolerable in a civilized community." *See, e.g.*, *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 527–28, 529 (5th Cir. 1994) (action of "calling the police and informing them that someone is intoxicated or using drugs," which lead to the person's arrest, is not sufficiently outrageous conduct" to support a claim for IIED "even if those statements are false"); *Creditwatch*, 157 S.W.3d at 817–18 (holding that a supervisor's actions of successfully getting an employee evicted "was callous, meddlesome, mean-spirited, officious, overbearing, and vindictive" but was "not so outrageous in character, and so extreme in degree" to "rise to the level necessary to establish" an IIED claim); *Diamond*

10

*Shamrock Refin. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 199, 202 (Tex. 1992) (holding that the plaintiff's allegations that his employer "falsely depict[ed]" him "in the community as a thief" and "potential employers[] knew that he had been terminated for stealing," even if true, "fall short of being beyond all possible bounds of decency, atrocious, and utterly intolerable in a civilized community") (internal quotations omitted).

Plaintiff emphasizes that she alleges Davis acted "purposely, knowingly, and intentionally" in making the false report, knowing the "devastating consequences" that would befall Plaintiff as a result. Doc. No. 55 at 6; *see* Doc. No. Doc. No. 51 at ¶¶ 15, 15(a)–(g), 17–19 (allegations that Davis "act[ed] with retaliatory intent" and "intentionally" made the false report and intended for Plaintiff to suffer those consequences). This, according to Plaintiff, "is indeed outrageous[.]" Doc. No. 55 at 6. The case law simply does not support Plaintiff's contention. The Texas Supreme Court confirmed that a defendant's motive for its actions, even if driven by "punitive intent or personal vendetta," is not alone sufficient to "support an extreme and outrageous finding." *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002). To be sure, the mere fact that a defendant's conduct "is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress." *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999); *see Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 609 (Tex. App—San Antonio 2018, no pet.) (cleaned up) (the fact that an action is

11

"tortious or otherwise wrong does not, standing alone, necessarily render the conduct 'extreme and outrageous.'") (quoting *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001)); *Maldonado v. FirstService Residential, Inc.*, 2021 WL 4243591, at \*3 (S.D. Tex. Sept. 17, 2021) (same).  Even taking as true Plaintiff's allegations that Davis acted with retaliatory intent in purposefully making a false report that caused Plaintiff to lose her CDL, any motivation Davis had for her alleged conduct cannot itself support an extreme and outrageous finding for purposes of an IIED claim.  *See Tex. Farm Bureau Sears*, 84 S.W.3d at 612;  *Brewerton*, 997 S.W.2d at 215.

Finally, Plaintiff insists that "a jury could conclude that Davis's conduct was extreme and outrageous."  Doc. No. 55 at 6.  But "[w]hether a defendant's conduct is extreme and outrageous is a question of law."  *Fuller*, 2023 WL 146251, at \*6 (quoting *Williams v. Northrop Grumman Vought*, 68 S.W.3d 102, 113 (Tex.App.—Dallas 2001, no pet.)).  The Court does not find that Davis's conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Sears*, 84 S.W.3d at 610.

Davis's conduct as alleged is simply not "the type of utterly indecent, intolerable, and atrocious behavior necessary to prevail on an intentional infliction of emotional distress claim,"  *McConathy*, 131 F.3d at 564, and Plaintiff cites no case law substantiating her assertion that she has plausibly alleged Davis's actions were so extreme and outrageous as necessary to support her IIED claim.  Because she does not establish the second element, Plaintiff fails to plausibly allege a prima facie claim for IIED.

12

<u>2.</u>    <u>Severe Emotional Distress</u>

Plaintiff also fails to plausibly allege that she suffered severe emotional distress as required under the fourth element and, therefore, her IIED claim would fail for this additional reason.

It is well-established that "mere worry, anxiety, vexation, embarrassment or anger" will not meet this requirement. *Regan*, 879 S.W.2d at 136. Indeed, the Fifth Circuit confirmed that "an IIED claim rests not only on extraordinary misconduct but also on an extraordinarily damaging impact on a plaintiff." *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 574 (5th Cir. 2023).

Plaintiff alleges that Davis's "intentionally false report" caused Plaintiff to lose her Class A CDL, so she can "no longer [] drive as an independent contractor commercial driver." Doc. No. 51 at 5, ¶ 19. Consequently, Plaintiff "sustained and will continue to sustain lost income," which is the "financially crippling outcome [that] Davis intended." *Id.*; *see id.* at 7, ¶ 30. Plaintiff further alleges that she has "experienced extreme emotional distress as a result of Davis' [sic] actions." *Id.* at 5, ¶ 19. This includes feeling "a sense of futility," being depressed and anxious, feeling "powerless" and isolated from her family, as well as feeling "shame and embarrassment" because she is not able financially to do things for her children and grandchildren. *Id.*

Taking Plaintiff's allegations as true, this alleged emotional distress simply falls short of what Texas courts have found to be the *severe* emotional distress necessary for an IIED claim. *See Amin*, 66 F.4th at 574 (string citing *Tidelands Auto. Club v. Walters*,

13

699 S.W.2d 939, 945 (Tex.App.—Beaumont 1985) (psychosomatic symptoms); *Am. Med. Int'l, Inc. v. Giuintano*, 821 S.W.2d 331, 342–43 (Tex.App.—Houston [14th Dist.] 1991, no pet.) (suicidal ideation and marked degradation in physical appearance); *Behringer v. Behringer*, 884 S.W.2d 839, 845 (Tex.App.—Fort Worth 1994, no pet.) (marked degradation in physical appearance); *Haryanto v. Saeed*, 860 S.W.2d 913, 922 (Tex.App.—Houston [14th Dist.] 1993, no pet.) (post-traumatic stress disorder)). "Emotional distress" in the context of an IIED claim is "any highly unpleasant mental reaction such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry, and nausea." *Patton*, 910 F. Supp. at 1272 (collecting cases); *see Regan*, 879 S.W.2d at 136. The distress Plaintiff has alleged here is more analogous to what Texas courts have found is not "severe" as a matter of law. *See, e.g., Peavy v. Harman*, 37 F. Supp. 2d 495, 523 (N.D. Tex. 1999)(Buchmeyer, C.J.), *aff'd in part and rev'd in part on other grounds*, 221 F.3d 58 (5th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001) (concluding that the plaintiffs' nightmares, insomnia, embarrassment, depression, anxiety, loss of friends, fatigue, stomach pains and headaches did "not constitute 'severe emotional distress' as a matter of law"); *Regan*, 879 S.W.2d at 136 (being "withdrawn and no longer happy", or feeling "anger, depression, and humiliation (even when embarrassed in front of children), are insufficient evidence of severe distress") (quoting first *Union Pac. R.R. Co. v. Loa*, 153 S.W.3d 162, 171 (Tex.App.— El Paso 2004, no pet.), then *Villasenor v. Villasenor*, 911 S.W.2d 411, 417 (Tex.App.— San Antonio 1995, no pet.)).

14

Courts have also found it "significant" when the plaintiff was not required to seek mental health treatment, concluding this "further militates against a finding of 'severe emotional distress.'" *Peavy*, 37 F. Supp. 2d at 523; *see Regan*, 879 S.W.2d at 136 (remarking that the plaintiff "did not seek professional help"); *Benavides v. Moore*, 848 S.W.2d 190, 196 (Tex.App.—Corpus Christi 1992, no pet.) (the plaintiff's "admission that she had not consulted mental health professionals and that she had no intention of doing so," was an "indicat[ion] that whatever actual distress [she] suffered, it did not rise to the level that a reasonable person could not be expected to endure").

The Court certainly does not intend to minimize or downplay any emotional distress Plaintiff may have suffered because of this incident. But Plaintiff's allegations, which the Court takes as true, cannot support the plausible inference that she suffered "emotional distress so severe that no reasonable person could be expected to endure it without experiencing unreasonable suffering." *Peavy*, 37 F. Supp. 2d at 523; *see Behringer*, 884 S.W.2d at 844 ("The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it."). Because she does not establish the fourth element, Plaintiff fails to plausibly allege a prima facie claim for IIED on this basis as well.

### 3.   Conclusion

As previously stated, the Texas Supreme Court has emphasized that the tort of IIED has "exacting requirements" that must be satisfied for a plaintiff to recover. *See Creditwatch*, 157 S.W.3d at 815 ("For the tenth time in little more than six years, we

must reverse an intentional infliction of emotional distress claim for failing to meet the exacting requirements of that tort.") (collecting cases).   Because Plaintiff fails to plausibly allege facts to support the second and fourth elements of an IIED claim, the Court must **grant** Defendants' Motion to Dismiss Plaintiff's IIED claim.

### B.  Negligent Training, Supervision, and Retention

In her only responsive argument to this claim, Plaintiff asserts that Defendants waived their Rule 12(b)(6) argument because they failed to raise it in one of their prior motions to dismiss.  Doc. No. 55 at 9–10.  Federal Rule of Civil Procedure 12(g)(2), which controls consolidating motions, provides that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  FED. R. CIV. P. 12(g)(2).  When read in conjunction with Rule 12(h), which governs waiving and preserving Rule 12(b) defenses, it is clear that Defendants did not waive their Rule 12(b)(6) defense to this claim.  Rule 12(h) provides that a "defense listed in Rule 12(b)(2)–(5)" is waived by a party who "omit[s] it from a motion in the circumstances described in Rule 12(g)(2)."  *Id.* 12(h)(1)(A).  (The limited exceptions addressed in Rule 12(h)(2) and (3) do not apply here.)  A failure to state a claim defense under Rule 12(b)(6) is notably missing from that list, which is logical in light of Rule 12(h)(2).  *Id.* 12(h)(2) (explaining that failure to state a claim defense can be raised in a Rule 7(a) pleading, a Rule 12(c) motion, or at trial).  Further, the case law in this Circuit supports the Court's conclusion that this argument

is without merit. *See, e.g., Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) (failure to state a claim defense is "explicitly except[ed]" from Rule 12(g)'s consolidation requirement); *Sutton Place 1 Townhouse v. AmGuard Ins. Co.*, 668 F. Supp. 3d 684, 693 & n.27 (W.D. Tex. Apr. 10, 2023) ("failure to raise a statute of limitations defense in its initial motion to dismiss doesn't bar the defendant from asserting it in a later motion to dismiss); *Azadpour v. Blue Sky Sports Ctr. of Keller*, Civ. Action No. 3:17-CV-1335-N-BK, 2018 WL 4189709, at *4 (N.D. Tex. Aug. 14, 2018), *accepted by*, 2018 WL 4184909 (N.D. Tex. Aug. 31, 2018) ("taken together, Rule 12(h)(2) specifically exempts motions to dismiss for failure to state a claim from the consolidation requirement of Rule 12(g), therefore preserving the [defendants'] statute of limitations defense from waiver").  For these reasons, Plaintiff's waiver argument fails.

Turning to the merits of this claim, "[t]o prevail on a claim for negligent hiring or supervision [or retention], the plaintiff is required to establish not only that the employer was negligent in hiring or supervising [or retention] the employee, but also that the employee committed an actionable tort against the plaintiff."  *Brown*, 178 S.W.3d at 384; *see Espindola*, 2014 WL 12605576, at *4. So, if Plaintiff cannot show that Davis committed an independent actionable tort against her, Plaintiff's negligent hiring, supervision, and retention claim against F2F must fail for "lack of causation."  *Brown*, 178 S.W.3d at 384.  The Court already concluded that Plaintiff's IIED claim, the only independent tort pled, fails as a matter of law.  Moreover, based on the

17

allegations in the Complaint, Plaintiff does not plead or otherwise allege any other independent actionable tort Davis allegedly committed against Plaintiff.

For these reasons, Plaintiff's claim for negligent hiring, supervision, and retention necessarily fails as a matter of law. *See Johnson*, 375 F. Supp. 2d at 550 (finding that dismissal of the plaintiff's IIED claim, the only tort alleged, "leaves him without a basis for a claim for negligent hiring"); *Frymier*, 2025 WL 1382868, at *4 (concluding that the plaintiff's negligent supervision claim must be dismissed because he did not allege an actionable tort committed by the employee).

## IV.    Conclusion

For the foregoing reasons, the Court **grants** Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. No. 51). Because the Court previously allowed Plaintiff a final opportunity to amend her Third Amended Complaint to plead her best case, Plaintiff's claims for intentional infliction of emotional distress and negligent hiring, supervision, and retention are hereby **dismissed with prejudice**.

**SO ORDERED.**

Signed April 28th, 2026.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE